**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF LOUISIANA**

**IN RE:**

| | |
|---|---|
| **KABUKI, LLC** | **CASE NO. 26-10173** |
| **DEBTOR** | **CHAPTER 11** |

**MEMORANDUM OPINION**

On March 2, 2026, the limited liability companies who own the following four related sushi restaurants filed voluntary petitions for bankruptcy relief pursuant to chapter 11: Kabuki, LLC[1] ("Kabuki"), Hairando, LLC[2] ("Hairando"), Dai Yon, LLC[3] ("Dai Yon"), and Tsunami Restaurants, LLC[4] ("Tsunami") (collectively, "Debtors"). Shortly after, the Debtors filed motions seeking substantive consolidation of their cases.

An evidentiary hearing was held on March 30, 2026. Upon conclusion of the hearing, and in part because the schedules and statement of financial affairs had not been filed and the initial meeting of creditors had not taken place, the court gave the parties a deadline of April 29, 2026, within which to file briefs to address (1) the application of the specific facts of this case to the factors courts consider for substantive consolidation and (2) the impact, if any, substantive consolidation would have on the ability to remain eligible for subchapter V. The United States Trustee ("U.S. Trustee") and the subchapter V trustee, Ryan Richmond ("Subchapter V Trustee"), filed briefs objecting to substantive consolidation in all four cases. Soaring Oaks LLC and the Office at Highland, LLC d/b/a HQ @ Highland (collectively, "Hairando's Landlord")

---

[1] Case no. 26-10173.

[2] Case no. 26-10174.

[3] Case no. 26-10175.

[4] Case no. 26-10176.

filed an objection in Hairando's bankruptcy case. Of note, no creditor of any of the Debtors filed a supporting brief.  Upon expiration of the deadline to file briefs, the court took the matter under advisement and now renders its ruling.

## I. Relevant Facts

The following facts were established either at the evidentiary hearing or in briefing and were unchallenged.  The Debtors have the same membership: 50% Yoi Okason, LLC and 50% Yoi Asa, LLC. They are all sushi restaurants called Tsunami located in south Louisiana with identical menus – two in Baton Rouge, one in Lafayette, and one in New Orleans.  They each have the same director and culinary director. The two restaurants located in Baton Rouge, Kabuki and Hairando, share a manager. The other two restaurants have different managers. The Debtors share an insurance policy for which they each pay their portion. Each Debtor has a separate property lease and landlord. Each Debtor has its own bank account,[5] payroll, its own books and records, and files its own tax returns. The Debtors transfer money amongst themselves without formal loan documents; however, those transfers are booked as "due to" or "due from" in their separate business records. The Debtors share some, but not all, of the same vendors, many of whom are now creditors in more than one of these cases. Those vendors invoice each Debtor separately.  Not surprisingly, the Debtors' loans are cross-collateralized so that the assets of each entity are collateral for the loans of the other entities.

## II. Substantive Consolidation

Substantive consolidation "treats separate legal entities as if they were merged into a single survivor left with all the cumulative assets and liabilities (save for inter-entity liabilities,

---

[5] The Debtors maintained separate accounts at Red River Bank pre-petition and now maintain separate DIP accounts there.

which are erased). The result is that claims of creditors against separate debtors morph to claims against the consolidated survivor."[6]  The Fifth Circuit explained substantive consolidation similarly in *In re Pacific Lumber Co.,*[7] stating that "it usually results in, *inter alia,* pooling the assets of, and claims against, the two entities; satisfying liabilities from the resultant common fund; eliminating intercompany claims; and combining the creditors of the two companies for the purposes of voting on reorganization plans." [8] The Fifth Circuit stated that "[s]ubstantive consolidation is an 'extreme and unusual remedy.'"[9] The court in *In re Extended Stay, Inc.*[10] articulated that substantive consolidation should be used "sparingly" because the "application of that doctrine may place creditors of one debtor on parity with creditors of a less solvent debtor."[11] The party moving for substantive consolidation bears the burden of proving that it is warranted by a preponderance of the evidence.[12]

While acknowledging the concept, the Fifth Circuit has not adopted a specific test for determining whether bankruptcy cases should be substantively consolidated. In the past, most

---

[6] *In re Owens Corning*, 419 F.3d 195, 205 (3d Cir. 2005) (quoting *Genesis Health Ventures, Inc. v. Stapleton* (*In re Genesis Health Ventures, Inc.*), 402 F.3d 416, 423 (3d Cir.2005)).

[7] *In re Pacific Lumber Co.,* 584 F.3d 229 (5th Cir. 2009).

[8] *Pacific Lumber*, 584 F.3d at 249 (quoting *In re The Babcock and Wilcox Co.,* 250 F.3d 955, 958–59 n. 5 (5th Cir.2001); *In re Augie/Restivo Baking Co., Ltd.,* 860 F.2d 515, 518 (2d Cir.1988)).

[9] *Pacific Lumber*, 584 F.3d at 249 (quoting *In re Gandy,* 299 F.3d 489, 499 (5th Cir.2002)).

[10] *In re Extended Stay, Inc.,* No. 09-13764-JLG, 2020 WL 10762310 (Bankr. S.D.N.Y. Aug. 8, 2020).

[11] *Extended Stay*, 2020 WL 10762310, at *43.

[12] *In re ADPT DFW Holdings, LLC,* 574 B.R. 87, 104 (Bankr. N.D. Tex. 2017); *In re AHF Dev., Ltd.,* 462 B.R. 186, 198 (Bankr. N.D. Tex. 2011);  *In re Introgen Therapeutics, Inc.,* 429 B.R. 570, 582 (Bankr. W.D. Tex. 2010).  The court notes that the Eleventh Circuit in *Eastgroup Props. v. S. Motel Ass'n, Ltd.*, 935 F.2d 245 (11th Cir. 1991), adopted a harm balancing test that results in burden shifting. This court declines to adopt this test, as do most of the courts in the Fifth Circuit.

courts used a lengthy and often unwieldy multi-factor test.[13] The Second Circuit in *In re Augie/Restivo Baking Co., Ltd.*[14] narrowed that test into two overriding factors: "(1) whether creditors dealt with the entities as a single economic unit and did not rely on their separate identity in extending credit ...; or (2) whether the affairs of the debtors are so entangled that consolidation would benefit all creditors."[15] These factors focus on creditors because, as the Second Circuit stated in *Augie/Restivo*, the "sole purpose of substantive consolidation is to ensure the equitable treatment of all creditors."[16] The use of the disjunctive "or" indicates that

---

[13] Those factors were articulated in *In re ADPT DFW Holdings, LLC*. 574 B.R. 87, 94-95 (Bankr. N.D. Tex. 2017). They include:

- the presence or absence of consolidated financial statements;
- the unity of interests and ownership between the various corporate entities;
- the existence of parent and intercorporate guaranties on loans;
- the degree of difficulty in segregating and ascertaining individual assets and liabilities;
- the transfer of assets without formal observance of corporate formalities;
- the commingling of assets and business functions;
- the profitability of consolidation at a single physical location;
- the parent corporation owns all or a majority of the capital stock of the subsidiary;
- the parent and subsidiary have common officers and directors;
- the parent finances the subsidiary;
- the parent is responsible for incorporation of the subsidiary;
- the subsidiary has grossly inadequate capital;
- the parent pays salaries, expenses, or losses of the subsidiary;
- the subsidiary has substantially no business except with the parent;
- the subsidiary has essentially no assets except for those conveyed by the parent;
- the parent refers to the subsidiary as a department or division of the parent;
- the directors or officers of the subsidiary do not act in interests of the subsidiary, but take directions from the parent;
- the formal legal requirements of the subsidiary as a separate and independent corporation are not observed; and
- the transfer of assets without formal observance of corporate formalities.

[14] *In re Augie/Restivo Baking Co., Ltd.,* 860 F.2d 515 (2d Cir. 1988).

[15] *Augie/Restivo,* 860 F.2d at 518.

[16] *Augie/Restivo,* 860 F.2d at 518. The court also notes that United States Supreme Court held in *Howard Delivery Serv., Inc. v. Zurich Am. Ins. Co.,* 547 U.S. 651, 126 S. Ct. 2105, 165 L. Ed. 2d 110 (2006), that "the Bankruptcy

"[t]he presence of either factor is sufficient to order substantive consolidation."[17]  This court will also employ the two-factor test.

### A. Did creditors deal with the Debtors as a single economic unit and not rely on their separate identities in extending credit?

The court in *Augie/Restivo* discussed the importance of this factor.

> With regard to the first factor, creditors who make loans on the basis of the financial status of a separate entity expect to be able to look to the assets of their particular borrower for satisfaction of that loan. Such lenders structure their loans according to their expectations regarding that borrower and do not anticipate either having the assets of a more sound company available in the case of insolvency or having the creditors of a less sound debtor compete for the borrower's assets.[18]

The Debtors contend that their creditors have treated them as one entity. The Debtors' director, Brandon Hargrave, and their financial advisor, Darryl Schouest,[19] testified at the evidentiary hearing.  Mr. Hargrave testified to his belief that creditors considered all the Debtors as one when extending terms and providing goods and services. He suggested that the cross-collateralization of their loans was evidence of that fact.  Mr. Schouest testified that his only knowledge regarding this issue came from Mr. Hargrave's representations to him.

No creditors presented testimony or evidence that they dealt with the Debtors as a single economic unit, and no creditors supported substantive consolidation. The self-serving testimony of Mr. Hargrave is insufficient to carry the Debtors' burden. Indeed, it was established at the

---

Code aims, in the main, to secure equal distribution among creditors." *Id*. at 655 (citing *Kothe v. R.C. Taylor Trust,* 280 U.S. 224, 227, 50 S.Ct. 142, 74 L.Ed. 382 (1930); *Kuehner v. Irving Trust Co.,* 299 U.S. 445, 451, 57 S.Ct. 298, 81 L.Ed. 340 (1937)).

[17] *ADPT*, 574 B.R at 95-96 (quoting *Augie/Restivo*, 860 F.2d at 519); *In re Extended Stay, Inc.,* No. 09-13764-JLG, 2020 WL 10762310, at *42 (Bankr. S.D.N.Y. Aug. 8, 2020).

[18] *Augie/Restivo*, 860 F.2d at 518-19.

[19] The court approved Mr. Schouest as the Debtors' financial advisor post-petition. He was not employed by the Debtors pre-petition.

hearing that the Debtors' vendors invoiced each location separately. This is further evidenced by the fact that some of them have already filed separate proofs of claims for different amounts in each case, as the chart below demonstrates.

|  | Kabuki | Hairando | Dai Yon | Tsunami |
|---|---|---|---|---|
| Community Coffee Co., LLC | Unsecured claim for $96.03 | Unsecured claim for $309.96 | Unsecured claim for $220.32 | Unsecured claim for $357.68 |
| Southside Produce Co. | Unsecured claim for $11,348.57 | Unsecured claim for $7,771.11 | Unsecured claim for $8,641.94 | Unsecured claim for $7,700.33 |

Hairando's Landlord filed an objection to substantive consolidation in that case only. It fears it will receive less if the Debtors are consolidated. Each Debtor has its own lease and a different landlord, and rent is one of the largest monthly expenses for each Debtor. It belies all logic to suggest that these landlords treated the Debtors as a single economic unit. And perhaps most problematic, Mr. Hargrave testified earlier in the case that the different locations would prop up the one with cash flow problems from time to time. Combined with his acknowledgment under oath that Dai Yon was currently struggling financially with substantial unpaid rent, it cannot be refuted that creditors of the other three cases might suffer at Dai Yon's expense. After the hearing, Dai Yon filed a motion to reject its lease, and its landlord filed a motion to compel payment of administrative claims pursuant to 11 U.S.C. § 365(d)(3). If the cases are substantively consolidated, Dai Yon's increased debts could easily result in decreased distributions to the creditors of the other three entities.

The court finds that the Debtors did not carry their burden of proving by a preponderance of the evidence that creditors dealt with the entities as a single economic unit and did not rely on their separate identities in extending credit. At a very minimum, Hairando's Landlord left no doubt that it expected its tenant to use all of its revenues to service its lease rather than

compromise its bargain by being forced to prop up another location. The court will now address the second factor.

### B. Are the Debtors' affairs so entangled that consolidation would benefit all creditors?

The Debtors argue substantive consolidation is warranted because they are "inextricably intertwined." The Debtors contend that they "have a symbiotic relationship and rely on the resources, assets, and operational assets of each other to exist as going concerns." They are in the habit of transferring money to each other as needed without the formality of promissory notes and maintain that without this practice, they would not have survived this long. In other words, at any given time, one restaurant's good week could allow it to "prop up" another's bad week of operations. While all of this is likely true, these arguments are not focused, as they must, on the creditor's point of view.

The testimony of the Debtors' director, Mr. Hargrave, and their business advisor, Darryl Schouest, revealed that the Debtors' affairs are not as entangled as they maintain.[20] The Debtors have separate assets, distinct physical locations, and lease property from different landlords. Due to their varied locations, the Debtors share some, but not all, of the same vendors, many of whom are now creditors. Those vendors invoice each Debtor separately. The Debtors maintain separate bank accounts. The income of each Debtor is deposited in its separate account. Each employee is paid from the bank account of the entity for whom he or she works. The Debtors have separate books and records and file separate tax returns. The transfers among the Debtors are shown in those records. These facts strongly suggest that the Debtors are distinct entities that could easily have their records unentangled.

---

[20] The Debtors' accountant, Patrick J. Gros, CPA, was not called as a witness.

Mr. Schouest testified that consolidation would allow the Debtors to increase their buying power with vendors. He also testified that having one substantively consolidated bankruptcy, rather than four separate cases, would result in significant cost and time savings, allowing the Debtors to continue operating.  Mr. Schouest testified that these savings would have a positive impact on distributions to unsecured creditors.

As stated earlier in this Opinion, the "sole purpose of substantive consolidation is to ensure the equitable treatment of all creditors."[21]  Only one creditor weighed in on the issue of substantive consolidation, Hairando's Landlord, and it strenuously objected to substantive consolidation. The court finds that the Debtors have not carried their burden of proving by a preponderance of the evidence that their affairs are so entangled that consolidation would benefit all creditors.  On the contrary, the uncertainty about the New Orleans location, Dai Yon, and possible significant administrative claims and rejection damage claims[22] suggests multiple creditors could actually be significantly worse off by substantively consolidating the cases.

**III. Would Substantive Consolidation Result in Ineligibility To Proceed in Subchapter V?**

The U.S. Trustee, Subchapter V Trustee, and Hairando's Landlord contend that the Debtors would exceed the statutory limit to proceed in subchapter V if their cases were substantively consolidated.  The court finds it unnecessary to reach this issue, as it will rule on other grounds.

---

[21] *Augie/Restivo,* 860 F.2d at 518.

[22] With respect to the New Orleans location, the Debtor and the landlord have reached a proposed resolution that could result in no additional claims against the estate arising from rejection of the lease.  However, that resolution, even if approved by the court, relies entirely on a future payment by certain individual guarantors of the Debtor's leasehold obligations.  In the absence of that payment, Dai Yon's estate will be burdened with very large additional claims.

**IV. Conclusion**

The Debtors have not met their burden of proving by a preponderance of the evidence that either (1) creditors treat them as a single economic unit when extending credit, or (2) their affairs are so entangled that substantive consolidation would benefit all creditors. Accordingly, the Debtors' Motions for Substantive Consolidation are denied. The court will enter separate orders in each case in accordance with this Memorandum Opinion.

Although the court has rejected substantive consolidation, joint administration may be beneficial. In *Clingman & Hanger Mgmt. Assocs. LLC v. Rieck*,[23] the court discussed the differences between joint administration and substantive consolidation, finding:

> There is a dramatic difference between the joint administration contemplated by Rule 1015(b) and substantive consolidation. Joint administration is a creature of procedural convenience. It is justified by the laudable desire to avoid wasting of resources, which would result through the duplication of effort if cases involving related debtors were to proceed entirely separately. Thus, rather than having two of everything, there need only be one trustee, one docket, and duplicate pleadings or claims can be avoided. The estates of each debtor, however, remain separate. In this way, the desire for administrative efficiency can be fulfilled without altering the substantive rights of the parties.[24]

The court believes all parties could benefit from joint administration. The Debtors are therefore afforded until May 22, 2026, to file motions for joint administration and notice them for expedited hearing on June 1, 2026, at 2:00 p.m. The notice of hearing must provide that parties may raise opposition at the expedited hearing. In the absence of timely filed motions, the

---

[23] *Clingman & Hanger Mgmt. Assocs. LLC v. Rieck*, 701 F. Supp. 3d 565 (S.D. Tex. 2023).

[24] *Clingman*, 701 F. Supp. 3d at 583-84 (quoting *Matter of Steury*, 94 B.R. 553, 553–54 (Bankr. N.D. Ind. 1988) (internal citations omitted)).

court will issue orders for the Debtors to appear and show cause on June 1, 2026, why their cases should not be jointly administered.

Baton Rouge, Louisiana, May 15, 2026.

**/s/ Michael A. Crawford**
MICHAEL A. CRAWFORD
UNITED STATES BANKRUPTCY JUDGE